Turley, J.
delivered the opinion of the court.
The only question for the consideration of the court in 'this case is, whether the bills of sale, absolute on their face, executed by complainant to defendant, one for a wagon and horses, and the other for a negro man, were by the contract of the parties at the time of their execution, intended to be mortgages.
The bill expressly charges that they, were, and tho answer as expressly denies the fact. A bill of sale, though absolute on its face, may be converted into a mortgage by proof of a parol agreement to redeem. 3 Yer. Rep. 513: But in order to do this, the proof of the agreement must be clear, decisive, and without doubt, or otherwise no man would be safe in his title, either to real or personal property. Is the. proof in this case of such a character? We think not. It shows that the property had been previously mortgaged to Shields, that Dickinson paid to him the amount due, being $523 52, part in a cash note, and part in his own note, and that the property was at the time worth $785. Upon which fact an argument is based, that complainant would not have contracted with defendant for an absolute sale, at so diminished *374 a price. This circumstance of itself cannot act as a defea-1 to the bills of sale. If the inadequacy of consideration were so gross, as to shock the mind, it might be relied on as evidence of a fraud and imposition, upon an application to rescind the contract, but it is not so here; the difference not so great, and all that the court can presume from it, in the absence of other prooí, would be, that the complainant was anxious to have the property released from the mortgaged debt, which was due, and that he placed the fund in the hands of another, under the hope, that he might be by him permitted to have a longer time to pay the money.
The case of Conway’s executor vs. Alexander, 7 Cranch, 241, does not conflict with this view of the case. There the court say, “that a conditional sale made, at a price bearing no proportion to the value of the property, would bring suspicion on the whole transaction, and in the opinion of some of the judges, would furnish irresistable proof that a sale could not have been intended, ’’manifestly on the ground of gross inadequacy of consideration, which they say would convert a conditional sale into a mortgage. This is the point principally pressed by the counsel for the complainant. It is true, there were loose and unsatisfactory remarks made by the defendant at different times after the execution of the bills of sale, as to an intention of permitting complainants to redeem the property, such as his remark to Morgan Fitzpatrick, “that no other man than complainant himself should redeem them.” To Lane himself, to “bring on the money.” To Fry, “that he (defendant) might as well have a good bargain as Fitzpatrick, and that Lane might have the property by paying him thirty per cent.” All of which amounts to nothing, and from which nothing can be inferred.
But it is said, that Richard Wilks proves that he heard Dickinson say, “that he had redeemed of Shields and he “did not believe complainant would be able to redeem it again, and if he did not, he had as well have a good bargain as any one else.” That George Dyer proves, “that he heard the defendant say, he had paid Shields $522 for the purpose of redeeming the property, in consequence of a contract between himself and complainant, and that his under • *375 standing was, that the defendant was to give up the property , 3 , , ,. i i irr t/ when complainant patu linn the money, and that Wm. Gordan was present when this conversation took place, and that Stephen Chinault proves that he heard defendant say, “all he wanted was his money at the time appointed, and complainant should have his property.” In answer, it has been well replied, that as to Wilk’s testimony, it is loose and uncertain, that it does not show that there was an agreement for redemption, much less one existing at the date of the' bill of sale, and is indirectly contradicted by the disposition of Shields, who says, that he drew the writings between the parties in their presence, and at their request, that the}- were signed immediately after they were drawn; that the defendant once or twice previous to the writing of the bill, informed him that he wonld have no other than absolute bills of sale for the property; that the bills of sale were written as they are, by the consent of the parties, that he did not transfer his lien, but destroyed it, and that his impressions are, that the deeds were read to complainant before they were signed. That as to George Dyer’s testimony, he does not state how his understanding was formed as to the intention of giving up the property when the money was paid, whether from facts or otherwise, and as to the substance of the conversation, Dyer himself, as is proved by John B. Hill, in July, 1834, said that he never heard the defendant say that the property was redeemable by the complainant, and furthermore, that Gordon, who was stated to have been present at the time the conversation, states that he did not hear it, and that Stephen Chinawt. is discredited. The court is of opinion, therefore, that upon this testimony no defeasance can be set up. But this opinion is greatly strengthened by the proof adduced by the defendant. Goff deposes, that shortly after the transaction, he inquired of the complainant whether there was any agreement between him and the defendant that the property was to be redeemed, and that he stated there was not, but that he thought that the defendant would permit him redeem, and Davidson proves that he was requested by complainant to inform the defendant, that the money ready for him and was answered that he had no right to *376 deem, that he did not buy the property to give back, and . , , , . , . . , r J . , . . he could not get it back without paying him more than be had given for it. We therefore affirm the decree of the court below, dismissing the bill.
Decree affirmed.